Judge Grimke
delivered the opinion of the court:
This action is brought for damage occasioned by grading Union lane and Water street, in the town of Cleveland. On June 15, 1834, an order was made by the corporation ior grading certain streets, including the two above mentioned. The order was made in pursuance of a law passed February 18,.1834. Union lane was graded in pursuance of the order in the year 1834. Water street was graded during the summer and fall of 1835, under an order for continuing the first-mentioned grade, and this order was made April 15, 1835. On March 7,1835, an act amendatory of the preceding act was passed by the legislature, appointing three persons therein named, to appraiso the damage which might occur to any persons from the prosecution of the work. On September 5,1835, a committee of three persons were appointed by the corporation, by virtue of section 4 of the last act, to appraise the damages caused by the grading. This committee was duly organized, and from about October 20, 1835, to February 26, 1836, met regularly to receive *and determine claims for damages; at which last-mentioned time they made their returns to the corporation, having disposed of all claims before them, since which they have never convened.
*553 It is admitted that the plaintiff had notice of the time and place when and where the committee met, and that he preferred a claim for the injury to his lot on Union lane, which was acted upon and disallowed by the committee. It is further admitted, that previous to January 1,1836, the plaintiff had notice of an act of the legislature, passed in December, 1835, amendatory of the preceding act of March, 1835, and that he did not present any claim for damage to his property on Water street. It is also admitted that the board of appraisers consisted of three persons, two of whom were citizens, and all freeholders of Cleveland, and that they generally .made their appraisement upon view of the premises, without examining witnesses or hearing parties, excepting that the statements of parties were heard upon request-
In what respect, then, does the case differ from that of Scovil v. Giddings, 7 Ohio, 211 ? In none, except that the present action is brought against the corporation, and in the former it was against an agent. But this in reality presents a difference of fact, and not of principle; the corporation acted under the authority of an act of the legislature, and no action will lie for what they have dono in the execution of that duty, unless they exceeded the authority confided to them, or abused that authority by acting arbitrarily or oppressively in the mode of carrying it into execution.
In Boulton v. Crowther, 2 B. & C. 703, where, by a general turnpike act, the trustees of roads were authorized to divert) shorten, or improve them, it was held that no action could be maintained against them for a consequential injury, resulting from an act which they were authorized to do. And this was only a ratification of the same principles which had been previously declared in Sutton v. Clarke, 6 Taunt. 34. There the defendants had a public trust to perform, and it was held that having acted bona fide, and according to their best skill and diligence, in the exercise of a public function, although they had done an act which occasioned consequential injury to a citizen, they were not liable for such damage. The case of Leader v. Moxton, 3 Wils. 461, has been sometimes supposed to be inconsistent with these determinations.
In Manufacturing Company v. Meredith, 4 D. & E. 790, Lord Kenyon says that he doubts the accuracy of the report of that case in Wilson. But in reality, that case is not at *all irreconcilable with any one of the subsequent determinations. It would seem from the report that the defendants .had been guilty *554 of an abuse of the authority intrusted to them; they were, therefore, trespassers ab initio. The question, therefore, was rightfully determined, although the court may have been mistaken in the annunciation of the general principle. The case which I have just referred to, from 4 D. & E., is itself a decisive authority against the present action.
The principle declared in these cases has been strengthened and confirmed by subsequent decisions in this country. In Steele v. Navigation Company, 2 Johns. 286, the action, as in this instance, was directly against the corporation, but inasmuch as they acted under the authority of an act of the legislature, it was held that no action was maintainable against them. And in Callender v, Marsh, 1 Pick. 418, where a surveyor was authorized by statute to dig down a street, it was decided that if he acted within the scope of his authority, a party injured could not institute an action against him, nor against any other person employed by him.
The power complained of, in this instance, is one which has been exercised in every civilized country. At Rome, the general care of the highways was given to the iE-liles, who appointed agents for the superintendence of the roads without, and of the streets within, the city. And one of the duties of these last was to level the streets. Where private property was taken for public uses, the civil law allowed a compensation. The common law lawyers have always contended against this right. In this country we have adopted the former rule, the State of South Carolina being the only one which I recollect whose constitution does not guarantee the right to be compensated in such casos. Whether this case, however, comes within the provision of our constitution, I think may well be doubted. Private property is not in reality appropriated to public uses; but by leveling the streets in Cleveland, a consequential injury only is sustained by individuals. It was in the power of the legislature, however, to award compensation ; and they have made effectual provision for that purpose. The act of February 18, 1834, gives the authority to grade Union and Water streets, and that of March 7, 1835, provides for the assessment of damages.
What just ground of complaint is there then? It is that the rightto jury trial is not preserved. There is not a single state in the Union, in which a case of this kind has been supposed to fall *within the constitutional provision relating to trial by *555 jury. From time immemorial, the practice of assessing damages, by commissioners variously appointed, has been in use in the United States. And yet notwithstanding so many of them have revised and changed their constitutions, it has never been thought necessary to make the guarantee of jury trial more comprehensive in its meaning than it was before supposed to be. There is a total inapplicability of the use of jury trial in such a case. It' may as well be said that a tax can not bo collected without convening a jury, in the case of every individual, to determine whether it is rightfully levied. If it should not bo, then an action would be maintainable; and so in this case, if the corporation had exceeded the authority intrusted to them, they would subject themselves to an action, and then, in both instances, jury trial would have its full application. 7 Ohio, 111.
It is evident, then, that this action can not be supported. Water street was graded in the summer and fall of 1835. The committee to assess were in session until February, 1836, and yet the plaintiff presented no claim for damages, probably because he did not approve the decision of the committee on his claim for damages on tfnion lane. The amendatory act of December 17, 1835, declares that those who shall omit to present their claims shall be deemed to have waived them; in that mode, and as against'the present defendants, there never existed a right of action.
Judgment for the defendant.